## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  JKB-22-439** |
| | : | |
| **DAVID WARREN** | : | |
| | : | |
| **Defendant.** | : | |

---

### SUPPLEMENTAL MOTION TO SUPPRESS FRUITS OF SEARCHES OF HISTORICAL CELL SITE LOCATION INFORMATION AND REQUEST FOR *FRANKS* HEARING

Defendant David Warren ("Mr. Warren"), by and through his counsel, John M. McKenna, Michael E. Lawlor, Adam C. Demetriou, and Brennan, McKenna & Lawlor, Chtd., respectfully submits the following Supplemental Motion to Suppress Fruits of Searches of Historical Cell Site Location Information and Request for *Franks* Hearing.

### I.    Factual and Procedural Background

On December 15, 2022, the Government filed a one-count Indictment charging Mr. Warren and five others with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). (ECF No. 1.) The Indictment alleges the beginning in or about 2014 and continuing until on or about the date of the Indictment, Mr. Warren conspired with others to conduct and participate in the affairs of the Black Guerilla

1

Family ("BGF"). The Indictment alleges 48 overt acts in furtherance of the charged conspiracy.

On December 14, 2023, Mr. Warren filed an Omnibus Motion to Suppress Fruits of Searches Conducted Pursuant to Warrants. (ECF No. 138.) In that Motion, Mr. Warren challenged several searches conducted by law enforcement. At the time of the filing of that Motion, Mr. Warren believed that the searches at issue had all been conducted pursuant to warrants. Among the searches at issue in that Motion is the search of historical cell site location information ("CSLI") for phone number 443-452-8277. Mr. Warren noted in the Motion that he was unable to locate in discovery a search warrant for the historical CSLI. Mr. Warren had reason to believe such a warrant existed because other warrants produced in discovery explicitly stated so.

For example, in the October 22, 2020 warrant[1] to search a cell phone seized from Mr. Warren during the course of a warrantless arrest that occurred on May 2, 2018,[2] Sergeant Joseph Landsman swore as follows: "On September 24, 2018, the Honorable Judge Paul Hanley signed a *Search Warrant* for historical cell site records

---

[1] Mr. Warren has moved to suppress the fruits of the search of that cell phone. As the Court can see, the warrant was issued more than two years after the phone was unlawfully seized.

[2] Mr. Warren has moved to suppress the fruits of that arrest and search.

on phone number 443-453-8277, a phone number used by David Warren." (ECF No. 205-7 at 9 (emphasis added).)[3] That was not true.

On May 3, 2024, counsel for the Government wrote to counsel for Mr. Warren stating that the historical CSLI records were produced in response to a Maryland state court Order issued during the investigation into the murder of John Eversley, an incident that is not alleged in the Indictment but with respect to which materials were provided in discovery.[4] The Government noted that it intended to address the legality of the Order in its Response to Mr. Warren's pretrial motions. On May 10, 2024, the Government filed its Consolidated Response in Opposition to Defendants' Pretrial Motions. (ECF No. 205.) In its Response, the Government argues the impossible: that a Stored Communications Act Order to obtain historical CSLI issued in *direct contravention* of United States Supreme Court precedent and under a far lower standard than the probable cause requirement of the Fourth Amendment should nonetheless be upheld. This Court should reject the Government's argument.

---

[3] The October 22, 2020 search warrant also references a "court order" for historical CSLI for phone number 443-314-6088. Mr. Warren has not been able to locate a copy of that order. The Government has indicated that it has not located a copy of this order. The Government has represented to the undersigned counsel that it does not intend to introduce at trial any historical CSLI produced pursuant to the purported order.

[4] Government counsel attached the previously provided application and order to this email. Mr. Warren does not allege that the Government failed to produce these materials.

As a result of the violation of Mr. Warren's Fourth Amendment rights, the fruits of that search must be suppressed.

## II.    Legal Standard

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches are presumptively unreasonable "except in certain carefully defined classes of cases." *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973) (internal quotation marks omitted). The Fourth Amendment further commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id*. Probable cause for a search exists when, "given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).

On June 22, 2018 the United States Supreme Court decided *Carpenter v. United States*, 585 U.S. 296 (2018). In *Carpenter*, the Supreme Court unequivocally held that "an order issued under Section 2703(d) of the [Stored Communications] Act is not a permissible mechanism for accessing historical cell-site records. Before compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one—get a warrant." 585 U.S. at 317. Under 18 U.S.C. §

2703(d), to obtain a Stored Communications Act order for historical CSLI, the Government was required "to show 'reasonable grounds' for believing that the records were 'relevant and material to an ongoing investigation.'" *Id*. (citing 18 U.S.C. § 2703(d). As the Supreme Court held, "[t]hat showing falls well short of the probable cause required for a warrant." *Id.* Indeed, the Supreme Court described the SCA standard as a "*gigantic departure from the probable cause rule*." *Id.* (emphasis added.)

Just days after the Supreme Court decided *Carpenter*, the Fourth Circuit recognized the import of the holding, which overturned previously binding Circuit authority: "In *United States v. Graham*, we held that 'the government does not violate the Fourth Amendment when it obtains historical [cell site location information] from a service provider without a warrant.' 824 F.3d 421, 425 (4th Cir. 2016) (en banc). In *Carpenter v. United States*, however, the Supreme Court made clear that the government's acquisition of Carpenter's cell site records 'was a search within the meaning of the Fourth Amendment.'"[5] *United States v. Chavez*, 894 F.3d

---

[5] Commentators too immediately recognized the importance of the holding in *Carpenter*. *See, e.g.*, Amy Howe, Opinion Analysis: Court holds that police will generally need a warrant for sustained cellphone location information (Updated), SCOTUSblog, *available at* https://www.scotusblog.com/2018/06/opinion-analysis-court-holds-that-police-will-generally-need-a-warrant-for-cellphone-location-information/ (June 22, 2018); Mark Sherman, Justices adopt digital-age privacy rules to track cellphones, Associated Press, *available at* https://apnews.com/article/3b59408315b14893b0b26bb505ce933d (June 23, 2018).

593, 608 (4th Cir. 2018) (decided July 2, 2018). The Fourth Circuit also held that "*Carpenter* is obviously controlling going forward." *Id.*

### III. The September 24, 2018 Stored Communications Act Order for Mr. Warren's Historical Cell Cite Location Information

On July 25, 2018, more than one month after the Supreme Court decided *Carpenter*, members of the Baltimore County Police Department responded to the intersection of South Beechfield Avenue and Wilkens Avenue after receiving reports of a shooting. At the scene, officers found John Eversley suffering from gunshot wounds. Mr. Eversley was pronounced deceased. Officers eventually focused upon Mr. Warren as a suspect in the murder investigation.[6]

On September 24, 2018, now more than three months after *Carpenter*, Detective Scott Young of the Baltimore County Police Department applied to Judge Paul Hanley of the Circuit Court for Baltimore Court for a Stored Communications Act order under 18 U.S.C. § 2703(d)[7] for the historical call detail records and historical CSLI of the phone number 443-453-8277 from March 1, 2018 through August 16, 2018. (ECF No. 205-6.) The Application purports to contain "specific and articulable facts showing *probable cause to believe the records and information sought are relevant and material to an ongoing criminal investigation.*" (*See* Ex. A;

---

[6] Mr. Warren has never been charged with this murder.

[7] The *sole* authority cited in the Application and Order is 18 U.S.C. § 2703(d). No other statutory or constitutional provision is to be found.

*see also* ECF No. 205-6 at 4 (emphasis added).) That same day, Judge Paul J. Hanley, an Associate Judge of the Circuit Court for Baltimore County since March 23, 2014, issued the § 2703(d) Order for Mr. Warren's historical CSLI. In the Order, Judge Hanley found that "there is *probable cause to believe the records and information sought are relevant and material to an ongoing criminal investigation* of a crime of Murder[.]" (*Id.* at 7 (emphasis added).) On September 25, 2018, T-Mobile provided Detective Young with the requested information. Various state and federal law enforcement agencies maintained the information and have continued to use it in a number of investigations to the present day, including in the investigation at issue in this case.

## IV.   Mr. Warren Moves to Suppress the Fruits of All Searches of Historical CSLI for Phones Associated with Him

As an initial matter, it appears that members of law enforcement applied for and received a number of Stored Communications Act orders for historical CSLI in this case. Mr. Warren moves to suppress the fruits of all searches of historical CSLI for phones allegedly associated with him whether conducted pursuant to pre-*Carpenter* SCA orders, post-*Carpenter* SCA orders, search warrants, or any other mechanism.

## V.    The September 24, 2018 SCA Order was Issued in Violation of the Fourth Amendment

Under *Carpenter*, law enforcement must "must secure a warrant to obtain historical CSLI." *United States v. Taylor*, 54 F.4th 795, 801 (4th Cir. 2022); *see also Carpenter*, 585 U.S. at 316 ("we also conclude that the Government must generally obtain a warrant supported by probable cause before acquiring [historical CSLI] records"). The showing required under 18 U.S.C. § 2703(d) of "reasonable grounds for believing that the records were relevant and material to an ongoing investigation" "*falls well short of the probable cause required for a warrant*." *Carpenter*, 585 U.S. at 317 (emphasis added). The Supreme Court definitively held that "an order issued under Section 2703(d) of the [Stored Communications Act] is not a permissible mechanism for accessing historical cell-site records." *Id.*

As noted above, the September 24, 2018 SCA Order for Mr. Warren's historical CSLI cited *only* 18 U.S.C. § 2703(d) as the legal authority for its issuance. The Application purported to demonstrate probable cause "to believe the records and information sought are relevant and material to an ongoing investigation." (ECF No. 205-6 at 4.) And that is precisely the finding Judge Hanley made in the Order. (ECF No. 205-6 at 7.) In contravention of United States Supreme Court precedent, law enforcement obtained Mr. Warren's historical CSLI in the absence of a warrant issued upon the finding of probable cause required under the Fourth Amendment. This Court must therefore suppress the fruits of this warrantless search.

8

## VI.     The September 24, 2018 SCA Order Is Not the Functional Equivalent of a Warrant

Contrary to the Government's argument, the SCA Order is *not* "the functional equivalent of a warrant." (ECF No. 205 at 40.) The Supreme Court has articulated three requirements for a warrant to issue under the Fourth Amendment:

> First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will *aid in a particular apprehension or conviction for a particular offense.* Finally, warrants must particularly describe the things to be seized, as well as the place to be searched.

*Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal citations omitted) (emphasis added). The SCA Order fails the test in several respects.

First, the Order was not issued upon the requisite finding of probable cause sufficient for Fourth Amendment purposes. The Supreme Court in *Carpenter* made clear that the *relevancy* showing under the SCA falls far short of the probable cause requirement of the Fourth Amendment. This matter is simply not up for debate. The September 24, 2018 SCA Order reflects a finding of probable cause "to believe the records and information sought are relevant and material to an ongoing criminal investigation[.]" (ECF No. 205-6 at 7.) The issuing Court made no finding of probable cause "to believe that the evidence sought will aid in a *particular apprehension or conviction* for a *particular offense*." *Dalia*, 441 U.S. at 255

(emphasis added). The Order therefore does not satisfy the Fourth Amendment warrant requirement.

In *Zadeh v. State*, 258 Md. App. 547 (2023), the Appellate Court of Maryland reviewed the legality of an August 7, 2014 Order issued pursuant to Maryland Courts and Judicial Proceedings Article ("CJP") § 10-4A-04, a state analogue of the federal Stored Communications Act. The *Zadeh* Court, relying upon *Carpenter*, found that the CJP § 10-4A-04 Order did not meet the warrant requirement of the Fourth Amendment:

> The August 7 Order was issued under CJP § 10-4A-04, which requires only that there be "reason to believe the contents of a wire or electronic communication, or the records or other information sought are relevant to a legitimate law enforcement inquiry." CJP § 10-4A-04(d)(1). As the Supreme Court explained in *Carpenter*—in interpreting a parallel provision in the federal Stored Communications Act requiring only *a showing of relevance*—that *"showing falls well short of the probable cause required for a warrant." Carpenter*, 138 S. Ct. at 2221. In the application for the August 7 Order, Det. Wolff explicitly referred to that lesser standard, certifying that "the location information likely to be obtained is relevant to the aforesaid ongoing criminal investigation[.]"

*Zadeh*, 258 Md. App. at 590 (emphasis added).[8] The *Zadeh* Court therefore held that the August 2014 Order, which was entitled "Probable Cause Order," did not satisfy the requirements of a warrant under the Fourth Amendment.[9]

Second, the September 24, 2018 Order was not issued by a neutral, detached judicial offer. Instead, Judge Hanley either wholly abandoned his judicial role and acted without regard for the precedent of the United States Supreme Court, or he served as a rubber stamp for law enforcement, issuing the Order after only a cursory reading. The Supreme Court decided *Carpenter* three months before Detective Young submitted the subject Application. It bears repeating that in *Carpenter* the Supreme Court held that "an order issued under Section 2703(d) of the [Stored

---

[8] In a footnote (ECF No. 205 at 42 n.7), the Government appears to argue that the September 24, 2018 SCA Order was actually issued pursuant to Md. Code Ann., Crim. Proc. § 1-203.1, a statute that, unlike the SCA, requires a showing of probable cause sufficient to meet the requirements of the Fourth Amendment. *See* § 1.203.1(b)(1). But, as noted above, the Order was sought and issued pursuant to § 2703(d), which requires only a showing of relevancy. In the course of the investigation into the Eversley murder, Baltimore County investigators *did* seek and obtain § 1-203.1 orders for other searches. They *did not* do so with respect to the search of historical CSLI for the 8277 number. The *Zadeh* Court rejected a similarly specious argument advanced by the State. 258 Md. App. at 591 ("We are not persuaded by the State's argument, relying on *Whittington*, that Zadeh's challenge to the August 7 Order addresses form over substance because the order met the constitutional requirements for a warrant pursuant to the safeguards established under CP § 1-203.1 . . . *First, as we have already established, the August 7 Order was sought and issued under the Stored Communications Act*—specifically CJP § 10-4A-04.") (emphasis added).

[9] The *Zadeh* Court affirmed the denial of the motion to suppress because the relevant order was issued *before* the Supreme Court decided *Carpenter*. In Mr. Warren's case, the September 24, 2018 Order was issued after *Carpenter*.

Communications] Act *is not a permissible mechanism for accessing historical cell-site records*. Before compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one—get a warrant." 585 U.S. at 317 (emphasis added). The Application and Order explicitly invoke § 2703(d). The Application and Order reference only the relevancy standard found constitutionally insufficient by the Supreme Court. A neutral and detached judicial officer acts in accordance with the "supreme laws of the land." *Testa v. Katt*, 330 U.S. 386, 391 (1947). In issuing this Order, Judge Hanley unfortunately did not.

Third, even if somehow an SCA order for historical CSLI issued in violation of *Carpenter* could be considered the functional equivalent of a warrant, the SCA Application and Order are nonetheless deficient. First, the Application relies upon the August 16, 2018 unlawful warrantless arrest and search of Mr. Warren.[10] Without the unconstitutionally obtained evidence, there would be no arguable basis to support any finding of probable cause. *Cf. United States v. Karo*, 468 U.S. 705, 719 (1984). Indeed, apart from evidence obtained and a result of that unlawful search and seizure, there is absolutely no other information in the Application that would even *suggest* a connection between Mr. Warren and Mr. Eversley. For that reason alone, even if

---

[10] This event is the subject of a pending motion to suppress. On that date, members of the ATF unlawfully arrested Mr. Warren. Members of the Baltimore Police Department subsequently searched a vehicle in which Mr. Warren had been seated at the time of his arrest and recovered a firearm allegedly used in the murder of Mr. Eversley. Testing revealed that Mr. Warren's DNA was not present on the firearm.

the Order could be considered the functional equivalent of a warrant, it is invalid and the fruits of any search conducted pursuant to it must be suppressed. *See, e.g.*, *United States v. Gray*, 302 F. Supp. 2d 646 (S.D.W. Va. 2004).

Moreover, the Application fails to establish a sufficient nexus between the July 25, 2018 murder of Mr. Eversley and historical CSLI for the 8277 phone number. "Probable cause to believe that a person is engaged in criminal activity is not *carte blanche* to search all their personal effects. There must also be some nexus between the suspected crime and the place to be searched—a substantial likelihood that evidence of a crime will be found *in a particular place*." *United States v. Orozco*, 41 F.4th 403, 409 (4th Cir. 2022) (emphasis in original) (internal citation omitted). The Application provides no nexus between the 8277 phone and the murder of Mr. Eversley. For example, there is no information in the Application to establish that Mr. Warren was in communication with Mr. Eversley, or anyone associated, with him in the months leading up to and following the murder, let alone information that such communications occurred using the 8277 number. There is no information at all suggesting any relationship or contact between Mr. Warren and Mr. Eversley before the date of the murder on July 25, 2018. Likewise, there is no information that Mr. Warren was even using the 8277 phone number at the time of

the murder of Mr. Eversley.[11] For these reasons, too, even if the SCA Order could be considered the equivalent of a warrant, it is invalid on its face.

## VII.   The Good Faith Exception Does Not Save the Unlawful SCA Order

The Government argues that notwithstanding the plain constitutional deficiency of the SCA Order, this Court should nonetheless uphold the search under the good faith doctrine. As an initial matter, the SCA Order is, by definition, not a warrant subject to the good faith doctrine of *United States v. Leon*, 468 U.S. 897 (1984). And in light of the Supreme Court's clear holding in *Carpenter*, the SCA Order for historical CSLI, issued on a standard of mere relevancy, is not the functional equivalent of a warrant. But even if the good faith exception *could* apply under these circumstances, it has no application here.

The purpose of the exclusionary rule "is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 217 (1960). To be sure, "when investigators act with an objectively reasonable good-faith belief that their conduct is lawful, the exclusionary rule will not apply." *Chavez*, 894 F.3d at 608 (citations omitted). "Objectively reasonable good faith includes searches

---

[11] As argued later, law enforcement omitted information showing that Mr. Warren had not been using the 8277 phone number for several months *prior* to the Eversley murder.

conducted in reasonable reliance on *subsequently invalidated* statutes." *Id.* (emphasis added). Searches conducted in contravention of the clearly established constitutional precedents of the United States Supreme Court are not subject to this exception. Unlike the SCA orders at issue in *Chavez*, the September 24, 2018 SCA Order was applied for and issued *after* the Supreme Court decided *Carpenter*. It is unreasonable for police officers and judges to disregard the Supreme Court's interpretation of the Constitution, the very document they swear to uphold. The Government has not identified a single case upholding a search of historical CSLI conducted pursuant to a post-*Carpenter* SCA order.

Accepting the Government's argument would lead to dangerous results. The Government would have this Court endorse a theory that as to each constitutional decision rendered by the Supreme Court, state actors enjoy a free pass period of at least three months within which to disregard precedent. The Government's argument, if accepted, would upset the constitutional order. It would invite lawlessness. When the Supreme Court speaks on a constitutional matter, government actors must heed its mandate. An order issued in violation of Supreme Court precedent cannot stand.[12]

---

[12] Moreover, as explained below, to the extent the Court concludes that the SCA Order satisfies the warrant requirement of the Fourth Amendment, the good faith exception does not apply because Det. Young intentionally or recklessly omitted material information from the application.

VIII. **In the Alternative, Mr. Warren Requests a Hearing Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978)**

Should this Court conclude that the SCA Order satisfies the requirements for a valid warrant under the Fourth Amendment, Mr. Warren requests a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, the Supreme Court "held that in certain narrowly defined circumstances a defendant can attack a facially sufficient affidavit." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)." "Along with affirmative false statements, *Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021).

To obtain a *Franks* hearing on the basis of a material omission in a search warrant application, Mr. Warren must make a substantial preliminary showing that: "(1) law enforcement made an omission; (2) law enforcement made the omission knowingly and intentionally, or with reckless disregard for the truth, and (3) the inclusion of the omitted evidence in the affidavit would have defeated its probable cause." *Id.* (citation omitted). If the Court finds that Mr. Warren has made such a showing, the Court "must hold a *Franks* hearing to develop evidence on the affidavit's veracity. If after the hearing the defendant establishes perjury or reckless disregard by a preponderance of the evidence and shows that the inclusion of the omitted evidence would defeat the probable cause in the affidavit, the search warrant must be voided and the fruits of the search excluded." *Id.*

16

In the Application for the SCA Order, Detective Young omitted critical information that would have made clear that the records sought would not aid in a particular apprehension or conviction for the July 25, 2018 murder of John Eversley. Specifically, Detective Young did not inform the reviewing judge that law enforcement had evidence that Mr. Warren had ceased using the subject telephone number *months before* Eversley murder or that the subject telephone had been in the possession of the Baltimore Police Department since Mr. Warren's warrantless arrest on May 2, 2018.[13]

### A.   Factual Background

On May 2, 2018 at about 2:12 p.m., Mr. Warren was subjected to a warrantless search and seizure on the 1200 block of E. Lafayette Avenue in Baltimore City. On that day, Officer Timothy Romeo, Sergeant Anthony Maggio, Officer Mark Pashkevich, and Officer Horne were all riding in one unmarked police car conducting what they characterized as routine patrols. The officers saw Mr. Warren driving a 2009 dark blue Honda Accord with registration number 6DF7581 and stopped Mr. Warren's vehicle. The officers then ordered Mr. Warren out of his car, handcuffed him, and searched the vehicle. On Mr. Warren's person, officers located an iPhone. The officers seized the iPhone, which Officer Pashkevich ultimately

---

[13] Mr. Warren has moved to suppress the fruits of this search and seizure.

submitted to the Baltimore Police Department's Evidence Control Unit, where it remained for several years.[14]

On June 27, 2018, Jonus Ben was shot in the 8500 block of Glen Michael Lane in Randallstown, Baltimore County, Maryland. Baltimore County Police Department Detective O'Shea assumed responsibility as the lead investigator into the shooting and responded to the scene. On June 29, 2018, Det. O'Shea retrieved video surveillance from a nearby Verizon location. In the footage, Det. O'Shea observed a dark blue Honda Accord driving quickly near the scene around the time of the shooting. According to police reports, that same day, Det. O'Shea obtained surveillance footage from the Northwest Crossing Apartment Homes. Det. O'Shea reviewed the footage and claims to have observed a dark blue Honda Accord with registration number 6DF7581 leaving the area of Glen Michael Lane around the time of the shooting. Det. O'Shea ran the registration through the MVA database and learned that the 2009 Honda Accord was registered to Shaquan Bell. On June 28, 2018, Det. O'Shea applied for and received an order to place a GPS tracking device

---

[14] Officers first transported Mr. Warren to the BPD Eastern District station. Officer Pashkevich then transported Mr. Warren to the BPD homicide unit, where former BPD Detective James Lloyd interrogated Mr. Warren about the March 16, 2018 murder of Charles Tate. Mr. Warren was ultimately charged with driving on a suspended license and unlawful possession of ammunition. Both charges were dismissed.

on the Honda Accord. *See* Ex. B. The device was installed on June 29, 2018. *See* Ex. C.

Meanwhile, on June 27, 2018, BCPD retrieved a LINX report related to the May 2, 2018 arrest of David Warren. *See* Ex. D. The report contains a reproduction of Officer Romeo's report of the May 2 arrest. The report notes that Mr. Warren was stopped while driving a blue Honda Accord with registration number 6DF7581. Officer Romeo's report states that officers seized an iPhone from Mr. Warren on the date of the arrest. The report also states that "[a]ll evidence was submitted to ECU by Officer Pashkevich under property numbers 18014651, 18014652, and 18014653." Handwritten comments of Baltimore County Police Department investigators appear on the scanned LINX report. One comment reads "ARREST 5/2/18." The other reads: "Eastern District Action Team Sgt Maggio 443-250-8211." Sergeant Maggio was one of the four officers who arrested Mr. Warren on May 2, 2018.

On July 17, 2018, Det. O'Shea applied for and received a warrant to search the following: the 2009 Honda Accord with registration 6DF7581l; the person of Shaquan Bell; and the person of David Warren. *See* Ex. E. On July 20, 2018, Det. O'Shea applied for and received a search warrant for records, including historical CSLI and call detail information related to phone number 443-515-7476, a number associated with Shaquan Bell, Mr. Warren's significant other. *See* Ex. F. In the

affidavit in support of the search warrant, Det. O'Shea swore that Mr. Warren had been arrested by BPD on May 2, 2018 while driving the relevant Honda Accord. Det. O'Shea also stated that he has listened to a May 3, 2018 jail call from Mr. Warren to 443-515-7476 in which Mr. Warren and Ms. Bell discussed their relationship and expressed their love for one another. On July 23, 2018, BCPD officers arrested Mr. Warren and interrogated him.[15] That same day, BCPD searched the Honda Accord and the Elkridge home Shaquan Bell and Mr. Warren shared. At the home officers seized Ms. Bell's iPhone. Officers downloaded the contents of Ms. Bell's phone later that afternoon.

On July 25, 2018, John Eversley was murdered in Baltimore County, Maryland. BCPD Detective Scott Young assumed responsibility as the lead investigator in the case. Officers located ballistics evidence at the scene but did not find any eyewitnesses. On August 16, 2018, Mr. Warren was the subject of a warrantless arrest and search by members of the ATF and the Baltimore Police Department.[16] On that day, ATF Agents Lisa Christy, Colleen Daly, and Shannon Day-Hill were conducting an operation using ATF Task Force Officer Christopher

---

[15] Mr. Warren has moved to suppress both the fruits of this arrest and his subsequent statements to law enforcement. After the interrogation, Mr. Warren was charged with motor vehicle offenses. He was released on his own recognizance. The charges were ultimately dismissed.

[16] This event is the subject of a pending motion to suppress.

Faller in an undercover capacity.[17] At gunpoint, Agents Daly and Christy ordered Mr. Warren out of a Toyota Avalon in which he was seated and arrested him. BPD officers Pashkevich and Horne, who had previously arrested Mr. Warren in May, arrived on scene. Seargeant Maggio arrived shortly thereafter. The officers and agents searched Mr. Warren and the vehicle and recovered cell phones and a firearm. Mr. Warren has been continuously incarcerated since that day. NIBN reports indicated a connection between the firearm seized on August 16 and the Jonus Ben and John Eversley shooting incidents.

On August 21, 2018, Detective Young, who was still investigating the murder of Mr. Eversley, met with members of BPD to discuss the purported matches between the firearm recovered on August 16 and shooting incidents in Baltimore County. *See* Ex. G. Det. Young and Det. O'Shea coordinated with one another and with Baltimore City and federal law enforcement in the investigations into the Jonus Ben and John Eversley shootings. On August 30, 2018, Det. O'Shea swore out a Statement of Charges charging Mr. Warren with the attempted murder of Jonus Ben. *See* Ex. H. On September 6, 2018, Mr. Warren was transferred from Baltimore City to the custody of Baltimore County. Mr. Warren was not charged with the murder of John Eversley.

---

[17] The operation was not related to David Warren.

On September 24, 2018, Det. Young applied for and received an SCA order in connection with the Eversley investigation for historical CSLI and other records related to phone number 443-453-8277, a phone number Mr. Warren used before his May 2 arrest. *See* Ex. A. The application contains representations about both the investigations into the attempted murder of Jonus Ben and the murder of John Eversley. Det. Young swore that Det. O'Shea had executed a search warrant on Ms. Bell's and Mr. Warren's home on July 23, 2018 and that Ms. Bell's phone had been downloaded. Det. Young swore that "[d]uring a review of the cellular phone download, telephone number 443-453-8277 had numerous communications with Shaquan Bell. Shaquan Bell had telephone number 443-453-8277 identified inside her phone has 'Hon3y Bunch.' It appears through text message (SMS) communications there were several arguments and both parties were involved in a relationship, with one outgoing message in the name, 'David.'" Det. Young continued, "[t]hrough a review of Shaquan Bell's cellular phone, it appeared David Warren utilized numerous cellular phones to include 443-453-8277." Ex. A.

The application contains no representation about the timing of the communications between Ms. Bell and Mr. Warren's 8277 number. The application contains no representation about any relationship or contact between Mr. Warren and Mr. Eversley before the date of the murder. The SCA Order ultimately directed

22

the disclosure of historical CSLI for the 8277 number from March 1 through August 1, 2018.

**B.     Omissions**

Detective Young did not inform the reviewing judge that the evidence in law enforcement's possession showed that Mr. Warren had ceased using the 8277 phone number *two months and twenty-three days before* the murder of Mr. Eversley. As noted above, BCPD downloaded Ms. Bell's phone on July 23, 2018. In the application for historical CSLI for the 8277 phone number, Det. Young details certain information learned from the review of the download of Ms. Bell's phone. Det. Young *did not* inform the reviewing judge that the last message from the 8277 phone number to Ms. Bell was sent on May 1, 2018 at 11:41 p.m. Ms. Bell read the message on May 2, 2018 at 2:33:39 p.m., at which time Mr. Warren was already in the custody of members of the Baltimore Police Department. Ms. Bell sent to the 8277 number a message that read "David" on May 2, 2018 at 2:33:47 p.m. That is the last communication contained in the download between Ms. Bell's phone and Mr. Warren's 8277 number. Ms. Bell's message was never read.



46 | **Start Time:** 4/24/2018 2:45:13 AM(UTC-4)
**Last Activity:** 5/2/2018 2:33:46 PM(UTC-4)
**Number of attachments:** 5
**Source:** iMessage: +14434779660
**Body file:** chat-73.txt

Participants:

+14434779660
* (owner)

+14434538277
Hon3y Bunch❤️*

+14435157476
* (owner)



+14435157476

I love you too

**Status:** Sent
**Delivered:** 5/1/2018 11:39:59 PM(UTC-4)
**Read:** 5/1/2018 11:41:44 PM(UTC-4)

5/1/2018 11:37:02 PM(UTC-4)

+14435157476

Tia

**Status:** Sent
**Delivered:** 5/1/2018 11:40:00 PM(UTC-4)
**Read:** 5/1/2018 11:41:44 PM(UTC-4)

5/1/2018 11:37:13 PM(UTC-4)

+14434538277 Hon3y Bunch❤️

Ok

**Status:** Read
**Read:** 5/2/2018 2:33:39 PM(UTC-4)

5/1/2018 11:41:48 PM(UTC-4)

+14435157476

David

**Status:** Sent
**Delivered:** 5/2/2018 2:33:47 PM(UTC-4)

5/2/2018 2:33:46 PM(UTC-4)

### C.    Intentionality

At a minimum, Detective Young recklessly omitted the fact that law enforcement had evidence that Mr. Warren was not using the 8277 number after May 2, 2018 – months before the Eversley murder. The SCA application was not submitted in haste. It was the result of a months long investigation. Indeed, at the time the application was submitted, Mr. Warren had been in custody for more than one month. Mr. Warren had been ordered held without bond in Baltimore County in relation to the attempted murder of Jonus Ben. In short, Mr. Warren wasn't going anywhere.

In contrast to the SCA application for records related to the 8277 number, in a contemporaneously signed SCA application for records related to a different number associated with Mr. Warren, Det. Young included information regarding the timing of Mr. Warren's communications as reflected in the download of Ms. Bell's phone. *See* Ex. I.[18] That application states as follows: "On 7/18/2018, an incoming SMS message is sent from 443-449-3705 to Shaquan Bell that says, 'I love you Quan.' There is also an incoming Instant Message the same day that says 'Meshawn.' After reviewing Shaquan Bell's cellular phone, it is apparent that David Warren commonly refers to her as 'Quan' in SMS messages." *Id.* Clearly, Det.

---

[18] Det. Young signed this application approximately 30 seconds before he signed the SCA application for records related to the 8277 phone number.

Young recognized the significance of the timing of communications showing Mr. Warren's use of a target phone number in relation to the investigation of the Eversley murder. Yet in the subject SCA Order, Det. Young failed to include information that the last communications between Ms. Bell and Mr. Warren's 8277 number occurred more than two months before the crime under investigation.

In the SCA application for records related to the 8277 number, Det. Young explicitly references, with no mention of timing, what turned out to be the last text message between Ms. Bell and the subject telephone number, a message sent on May 2, 2018 at 2:33 p.m. that read "David." This message was never marked as read. Det. Young failed to inform the reviewing judge that this was the *last* communication in the download between Ms. Bell's phone and the 8277 phone. As noted above, Det. Young and Det. O'Shea collaborated with respect to their investigations of Mr. Warren. By at least June 27, 2018, Det. O'Shea had obtained BPD Officer Romeo's report of the May 2, 2018 arrest of Mr. Warren. On August 21, 2018, nearly a month after the download of Ms. Bell's phone, Det. Young himself met with members of BPD and ATF to discuss investigations concerning Mr. Warren. As a detective with years of experience, Det. Young should have realized that there was a good reason for the absence of communications after May 2 between Ms. Bell's phone and the 8277 number: the phone had been seized on that date and was no longer in use.

26

The omission of this information was not mere negligence or an innocent mistake. Det. Young chose to include information about the timing of communications with respect to a phone Mr. Warren was using in July 2018, close in time to the murder of Mr. Eversley. He *did not* include such information in the application as to the 8277 phone number. These two applications were signed 30 seconds apart. At a minimum, the information was recklessly omitted.

### D.    Materiality

The omitted information was material to a finding of probable cause with respect to the SCA Order for the 8277 number.[19] The subject application sought records relevant to the investigation of the murder of John Eversley. That murder occurred on July 25, 2018. The application contains no information reflecting any prior relationship or interactions between Mr. Eversley and Mr. Warren. Det. Young omitted information that Mr. Warren had not been not using the 8277 number as of May 2, 2018. Had Det. Young stated in the application that the last communications between Ms. Bell and Mr. Warren's 8277 number took place on May 2, 2018, months before the murder under investigation, and that there was evidence that in the days *before* the murder Mr. Warren was using a different phone to communicate with Ms. Bell, the reviewing judge would have concluded that the subject application

---

[19] As argued above, the Order was not issued under the probable cause standard required by the Fourth Amendment.

failed to establish probable cause that evidence leading to an arrest or apprehension *for the murder of Mr. Eversley* would be found in the records for the 8277 number.

In light of these circumstances, Mr. Warren submits that he has more than met his burden to obtain a *Franks* hearing.

## CONCLUSION

This case does not present a close call. The Supreme Court's holding in *Carpenter* is clear. What the Government calls a formalistic requirement, the Supreme Court has stated is a constitutional rule – a rule the Fourth Circuit has held to be "obviously controlling going forward." *Chavez*, 894 F.3d at 608. The fruits of a search conducted in direct violation of that holding are not admissible evidence in a criminal trial. This Court should suppress the fruits of the September 24, 2018 Stored Communications Act Order and all evidence derived therefrom. However, if this Court determines that the SCA Order constitutes the functional equivalent of a warrant, the Court should hold a *Franks* hearing in light of the omission of information material to any determination of probable cause.

Respectfully submitted,

_____/s/_____

John M. McKenna
Michael E. Lawlor
Adam C. Demetriou
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of June, 2024, the foregoing was served on all parties via ECF.

_____/s/_____

John M. McKenna