## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  JKB-22-439** |
| | : | |
| **DAVID WARREN** | : | |
| | : | |
| **Defendant.** | : | |

---

## REPLY IN SUPPORT OF MOTION TO SUPPRESS FRUITS OF CELL PHONE SEARCHES AND MOTION TO SUPPRESS FRUITS OF SEARCHES CONDUCTED PURSUANT TO WARRANTS

Defendant David Warren ("Mr. Warren"), by and through his counsel, John M. McKenna, Michael E. Lawlor, Adam C. Demetriou, and Brennan, McKenna & Lawlor, Chtd., respectfully submits the following Reply in Support of his Motion to Suppress Fruits of Cell Phone Searches (ECF No. 135) and Motion to Suppress Fruits of Searches Conducted Pursuant to Warrants (ECF No. 138).

### I.    Motion to Suppress Fruits of Cell Phone Searches (ECF No. 135)

### A.    Silver iPhone Seized on May 2, 2018

On May 2, 2018, Mr. Warren was the subject of a warrantless traffic stop and arrest. Four BPD officers pulled over Mr. Warren's vehicle because they contended that the rear license plate was hanging from the from the right side.[1] The officers

---

[1] Body-worn camera footage shows clearly that this assertion is not true.

1

ultimately searched the vehicle and found marijuana and a single bullet. Officer Romeo seized from Mr. Warren's person a silver iPhone. Mr. Warren has moved to suppress the fruits of the presumptively unlawful search and seizure. Should this Court grant that motion, the motion to suppress the fruits of the search of the iPhone seized that day will be rendered moot.

After his arrest, officers transported Mr. Warren to the BPD homicide unit to be interviewed. They also submitted various items, including the bullet and Mr. Warren's iPhone to the BPD evidence control unit. That same day, Mr. Warren was charged with driving on a revoked license and unlawful possession of one round of ammunition. Those charges were dismissed on June 20, 2018. At no time during the pendency of that matter did officers obtain a warrant to search the contents of the cell phone.

The iPhone remained, unsearched, at the BPD evidence control unit for *years*. On October 22, 2020, BPD Sergeant Joseph Landsman applied to Judge Catherine O'Malley of the District Court of Maryland for Baltimore City for a warrant to search the contents of that cell phone for evidence related to the murders of C.N. and J.A., which occurred on April 4, 2018. Judge O'Malley issued the warrant. The Government intends to introduce evidence obtained pursuant to that warrant at the trial in this case. It would have this Court conclude, in the absence of any authority supporting its position, that a delay of more than *29 months* between the seizure of

a phone and the application for a warrant to search its contents complies with the Fourth Amendment. The Court should reject this argument.

In *Pratt*, the Fourth Circuit held that "[a] seizure that is lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests. To determine if an extended seizure violates the Fourth Amendment, [courts] balance the government's interest in the seizure against the individual's possessory interest in the object seized." *United States v. Pratt*, 915 F.3d 266, 271 (4th Cir. 2019) (internal citations omitted). Under *Pratt*, courts also consider whether the Government has provided a persuasive justification for the delay in obtaining a warrant. The United States Court of Appeals for the Eleventh Circuit employs a similar test. That Court has identified the following factors to consider when a delayed warrant is at issue: (1) the significance of the interference with an individual's possessory interest; (2) the duration of the delay; (3) whether the individual consented to the seizure; (4) the Government's legitimate interest in holding the property as evidence, and (5) whether members of law enforcement were diligent in pursuing their investigation. *United States v. Laist*, 702 F.3d 608, 613-614 (11 Cir. 2012).

Tellingly, the Government has not identified a single case upholding as reasonable a 29-month delay in obtaining a search warrant. In *Pratt* itself, the Fourth Circuit found unreasonable a 31-*day* delay in obtaining a warrant to search a cell

phone. Other courts too have rejected as unreasonable warrants issued after delays far shorter than the delay at issue here. *United States v. Wilkins*, 538 F. Supp. 3d 49, 95 (D.D.C. 2021) (Contreras, J.) (rejecting as unreasonable a 15-month delay in obtaining a warrant to search a phone); *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009) (21-day delay in obtaining warrant to search computer found to be unreasonable).

The Government claims that Mr. Warren had such a diminished possessory interest in the phone as to render reasonable a delay of this extreme magnitude. The Court should reject this argument. As an initial matter, courts have repeatedly affirmed that individuals maintain a strong possessory interest in their smartphones and computers. *E.g.*, *Wilkins*, 538 F. Supp. 3d at 92 (D.D.C. 2021) (citing *Laist*, 702 F.3d at 614) ("This recognition of the capabilities of modern smartphones . . . means that they contain similar possessory interests to that of an individual's personal computer. And 'individuals may have a particularly powerful possessory interest' in their own computers, as they are 'relied upon heavily for personal and business use.' Accordingly, as a starting point, Mr. Wilkins appears to have a strong possessory interest in his ZTE phone."). Mr. Warren did not act seriously to diminish this strong interest. As in *Wilkins*, Mr. Warren did not consent to the seizure of his phone on May 2, 2018.

4

Much like in *Wilkins*, here the Government's balancing analysis relies upon almost exclusively on Mr. Warren's purported failure to demand the phone's return to argue that Mr. Warren forfeited any and all possessory interest in it. The Government states that Detective Romeo will testify that "at no point did Warren ask for the phone." (ECF No. 205 at 52.) That testimony would be false. At approximately the 30 minute and 50 second mark in Officer Romeo's body-worn camera footage, as Officer Romeo and Officer Horne are placing Mr. Warren into a police vehicle, Mr. Warren asks: "Can I get my phone?" Officer Romeo responds: "It will probably go down with your property." Clearly, Mr. Warren asserted his possessory interest in the phone.[2]

Courts have rejected the very argument the Government advances here. *See United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) ("In addition, it can be revealing to see whether the person from whom the item was taken ever asserted a possessory claim to it—perhaps by checking on the status of the seizure or looking for assurances that the item would be returned. If so, this would be some evidence (*helpful, though not essential*) that the seizure in fact affected her possessory interests.") (emphasis added). As in *Wilkins*, there is good reason that Mr. Warren may have avoided reaching out to law enforcement to inquire about his phone. As

---

[2] This interaction is also captured on Officer Horne's body-worn camera at the 30 minute and 46 second mark.

the Government has repeatedly emphasized, BPD has been actively investigating Mr. Warren for years. And such "[a]n unwillingness to invite a criminal prosecution" "cannot [be] equat[ed]. . . [to] a voluntary abandonment of any interest." *Walter v. United States*, 447 U.S. 649, 658 n.11 (1980); *see also Wilkins*, 538 F. Supp. 3d at 93.

This Court must balance Mr. Warren's strong possessory interest in the phone against the Government's justification for the lengthy seizure. The Government argues that the extended seizure was justified because "the phone contains substantial evidentiary value related to violent crimes" (ECF No. 205 at 53.) The Government again misses the mark. The phone was *not* seized in connection with the investigation of a crime of violence. The phone was seized in the course of a traffic stop premised upon an allegedly crooked license plate. Mr. Warren was charged with driving while suspended and unlawful possession of ammunition. In the time before those charges were *dismissed* in June 2018, law enforcement did not seek a warrant for the phone. There is simply no argument that such an extended seizure would have been necessary to preserve evidence of dismissed charges. Again, as in *Wilkins*, the Government "in short, seems to have inadvertently retained the [iPhone] for over [29] months with no real justification—and certainly no probable cause or reasonable suspicion— until it was rediscovered when it could

serve a useful purpose for law enforcement." 538 F. Supp. 3d at 94. The Government's interest in the extended seizure is, to say the least, weak.

Under *Pratt*, this Court also considers the diligence with which law enforcement sought a warrant to search the cell phone at issue. Here, investigators did not act with diligence. The phone was essentially forgotten for 29 months. The murders of C.N. and J.A. occurred on April 4, 2018. Sergeant Landsman is a task force officer with the FBI. On January 23, 2020, Jeremy Tepper, another FBI TFO, applied to Judge Coulson of this Court for a warrant to search Mr. Warren's Instagram account. *See* Ex. G to ECF No. 205 (filed under seal). In the supporting affidavit, TFO Tepper summarized the state of the investigation into the April 2018 murders. TFO Tepper represented that in April *2019*, a confidential source told investigators that Mr. Harrison paid Mr. Warren and others to commit the murders. The affidavit also alleges that the same confidential source reported that he had spoken with Mr. Warren and that Mr. Warren himself indicated that he had been paid to commit the murders.[3] If, as of April 2019, investigators had this information from a confidential source whom they represented to a judge of this Court to be "truthful and reliable," then there is simply no legitimate explanation as to why those same investigators would not at that time have sought a warrant to search a cell

---

[3] Mr. Warren is not aware of the identity of the confidential source.

phone seized from Mr. Warren one month after the murders. Again, the record shows that officers simply forgot about the phone. It does not show diligence.

The Government contends that Sergeant Landsman's receipt of the alleged murder weapon in October 2020 justifies the unreasonable delay in seeking a search warrant for the phone. The weapon at issue was seized from a man named Reginald Goodall by the Maryland Transportation Authority Police on October 22, *2019*. On November 15 and 18, 2019, officials with the Maryland State Police Forensic Sciences Division entered test fired casings from the subject firearm into NIBIN and IBIS. The results from *both* databases indicated a connection between the casings fired from that firearm and ballistics evidence found at the scene of the murders of C.N. and J.A. *See* Ex. A. The Government does not explain why law enforcement officials would not have obtained information related to that presumptive match as early as November 2019, especially if they were diligently investigating the murders.

Finally, the Government argues that the good faith exception saves this warrant. Both the Seventh and the Ninth Circuits have declined to apply the good faith exception in cases like this. *Burgard*, 675 F. 3d at 1035 ("When an officer waits an unreasonably long time to obtain a search warrant, in violation of the Fourth Amendment, he cannot seek to have evidence admitted simply by pointing to that late-obtained warrant . . . removing this sort of police misconduct from the ambit of the exclusionary rule would have significant implications: it would eliminate the

8

rule's deterrent effect on unreasonably long seizures. Police could seize any item—a phone, a computer, a briefcase, or even a house—for an unreasonably long time without concern for the consequences, evidentiary and otherwise."); *United States v. Song Ja Cha*, 597 F.3d 995, 1006 (9th Cir. 2010) ("[T]he exclusionary rule is applicable where seizures are unconstitutionally long" to "deter unreasonable police behavior and to provide for judicial determination of probable cause."). Applying the good faith exception here would eviscerate the exclusionary rule's deterrent effect with respect to unreasonably long seizures. *Wilkins*, 538 F. Supp. 3d at 96. The Court should suppress the fruits of this search warrant.

The warrant is also deficient. First, it relies upon evidence that was seized unlawfully. Specifically, the warrant relies upon the August 16, 2018 warrantless arrest and search of Mr. Warren and the vehicle he was operating. It also relies upon historical CSLI for the 8277 phone that was obtained in September 2018. As argued in a simultaneously filed supplemental motion, that data was obtained in violation of the Fourth Amendment's warrant requirement.[4] The affidavit also relies upon historical CSLI for a -6088 number, but the Government has represented to counsel that it cannot locate the court order authorizing the search of that CSLI and will not rely on that data at trial. The warrant also relies upon the May 2, 2018 warrantless

---

[4] *See* Supplemental Motion to Suppress Fruits of Searches of Historical Cell Site Location Information and Request for *Franks* Hearing.

search and seizure of Mr. Warren. All of this information must be excised from any review of the probable cause set forth in the warrant. *United States v. Gillenwaters*, 890 F.2d 679, 681-82 (4th Cir. 1989). Additionally, Mr. Warren is entitled to a hearing on this warrant pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The affidavit contains a false statement with respect to the search of historical CSLI for the -8277 phone. Officers did not, as the affidavit represents, apply for and receive a warrant to obtain this information. Instead, officers relied upon an invalid Stored Communications Act Order in contravention of the Supreme Court's decision in *Carpenter v. United States*, 585 U.S. 296 (2018). Had Sergeant Landsman not included this affirmatively false statement, there would have been no probable cause for the warrant to issue for there would be no showing of any nexus between the phone at issue and the murders under investigation.

### B.    LG Phone Seized on August 16, 2018

The Government has disclaimed any intent to introduce evidence from this phone at trial. Mr. Warren notes that this phone was seized from a car he had been operating when he was arrested without a warrant by members of the ATF on August 16, 2018. Mr. Warren has moved to suppress the fruits of that search and seizure and all evidence derived therefrom, to include this phone.

10

### C.     Black iPhone Seized on August 16, 2018

Mr. Warren submits that any evidence seized from this phone is inadmissible because it is derived from the unlawful warrantless search and seizure of Mr. Warren and his vehicle on August 16, 2018. The Government's arguments with respect to this phone are unclear. As an initial matter, the Government appears not to rely on the September 25, 2020 warrant for the search of this phone. (ECF No. 205-8.) To the extent the Government does rely on that warrant, Mr. Warren asserts that officers acted unreasonably in applying for such a warrant more than two years after the phone had been seized.[5] Mr. Warren incorporates the arguments raised above with respect to the sufficiency and legality of the warrant and notes that it was issued on the basis of unlawfully obtained evidence. It now appears that the Government relies upon a September 11, 2018 warrant issued by Judge Copperthite. Gov. Ex. M (filed under seal).

The Government argues that Mr. Warren does not have standing to challenge the search of this phone. As an initial matter, both ATF Agent Piccirilli (Gov. Ex. M) and FBI TFO Landsman (Gov. Ex. L) represented under oath to different judges that this phone was seized from Mr. Warren and that he had been using it. The Government represents in its Response that "there was evidence that Warren

---

[5] On August 17, 2018, Mr. Warren was charged with firearms offenses related to the August 16, 2018 search and seizure. Those charges were dismissed on January 28, 2019, well before Sergeant Landsman sought this warrant.

borrowed the phone from Prince on occasion." (ECF No. 205 at 55.) The phone was seized from a vehicle Mr. Warren was operating at the time of his arrest on August 16, 2018. At the time Mr. Warren was ordered out of the vehicle, he was the only occupant. These circumstances are unlike others in which courts have held that defendants lack standing to challenge the search of cell phones seized from them. In *United States v. Currie*, No. 8:20-CR-00262-PWG, 2022 WL 195504, at *4 (D. Md. Jan. 21, 2022), Judge Grimm held that a defendant lacked standing to challenge the search of data stored on two cell phones where the cell phones at issue belonged to the alleged victim in the case. Here, the Government *concedes* that Mr. Warren lawfully used the cell phone at issue. There is no evidence that Mr. Warren stole this phone. In *United States v. Rocha*, No. 06-40057-01-RDR, 2008 WL 4498950, at *6 (D. Kan. Oct. 2, 2008), on the other hand, the Government argued that the defendant lacked standing to challenge the search of several cell phones seized from his RV during a traffic stop. The Court rejected the argument, finding that the evidence established that the defendant exercised control over the subject phones. Mr. Warren has clearly established a legitimate expectation of privacy in the phones he possessed in his car.

Mr. Warren now addresses the September 2018 warrant to search the contents of that iPhone. First, the warrant relies upon the unlawful warrantless search and seizure of August 16, 2018. Second, the affidavit in support of the warrant does not

establish a sufficiently particularized nexus between the contents of the cell phone and any alleged drug trafficking. The warrant relies upon various confidential sources to attempt to connect Mr. Warren to the so-called Lafayette DTO, yet it contains no representations about the background and reliability of those sources. Third, the warrant is overbroad. It permits a nearly limitless search of the files contained on the phone. On its face, after excising references to unlawfully obtained evidence, the warrant is so insufficient as to preclude reasonable reliance on it.

## II.    Motion to Suppress Fruits of Searches Conducted Pursuant to Warrants (ECF No. 138)

### A.    July 17, 2018 Warrant to Search Mr. Warren's Person

The Government represents that it does not intend to introduce any evidence obtained pursuant to this warrant. (ECF No. 205 at 36.) However, with respect to Mr. Warren's motion to suppress the fruits of a July 23, 2018 arrest, the Government argues that "[t]his was not a warrantless search and seizure as officers had a valid search warrant to execute on Warren's person that authorized the seizure of any cellphones." (ECF No. 205 at 15.) Mr. Warren persists in his motion to suppress the fruits of the July 17, 2018 warrant. He also persists in his motion to suppress the fruits of the July 23, 2018 search and seizure.

On July 17, 2018, Det. O'Shea of the Baltimore County Police Department applied to Judge John Nagle of the Circuit Court for Baltimore County for a warrant to search Mr. Warren's person (including his cell phones); the person of his

13

significant other; a blue Honda Accord; and a residence Mr. Warren shared with his significant other. *See* Ex. B. Judge Nagle issued the warrant. The warrant sought information in connection with the investigation into the June 27, 2018 attempted murder of Jonus Ben in Randallstown. Mr. Warren challenges this warrant in several respects. First, the warrant relies upon information obtained from the unlawful warrantless arrest of him by members of BPD on May 2, 2018. Without that information, there is simply nothing in the affidavit to establish any nexus between Mr. Warren and the attempted murder of Jonus Ben. Moreover, the affidavit states that "both David Warren and Victim Jonus Ben are members of the Black Guerilla Family[,]" yet it provides no support for that assertion. After excising the unlawfully obtained information from the affidavit, there is not sufficient evidence presented to establish probable cause to believe that evidence of the shooting of Jonus Ben would be found on Mr. Warren's person or at his home. This Court should suppress the fruits of the July 17, 2018 warrant.

### B.     September 18, 2018 Instagram Warrant

The Court should suppress the fruits of this warrant for several reasons. The warrant relies upon the fruits of the May 2, 2018 unlawful warrantless search and seizure of Mr. Warren, to include jail calls Mr. Warren allegedly made while he was incarcerated in connection with that arrest. The warrant also relies upon the August 16, 2018 unlawful warrantless search and seizure of Mr. Warren. Furthermore, the

warrant does not contain information to establish any nexus between the shooting of Jonus Ben and Mr. Warren's Instagram account. The Government argues that Det. O'Shea's speculation that "Instagram wall posts and messages *could* provide detectives with information or motive regarding the crime under investigation" is sufficient to demonstrate nexus. (ECF No. 205 at 38 (emphasis added).) Mere speculation, however, is insufficient to demonstrate a nexus between a crime under investigation and a location to be searched. *See, e.g.*, *United States v. Shanklin*, No. 2:12CR162, 2013 WL 6019216, at *8-9 (E.D. Va. Nov. 13, 2013) (rejecting as invalid a search warrant in which the affiant cited "a possibility that the computers contain evidence of the exploitation of children, a speculation that is insufficient to establish probable cause" and declining to apply the good faith exception where "[t]he detective attempted to establish probable cause using conclusory and speculative assertions"); *United States v. White*, 660 F.2d 1178, 1184 (7th Cir. 1981) ("A lawful seizure must be based upon a 'nexus' between the item seized and particular criminal behavior. The 'nexus' must be one *known to the officers* at the time of the seizure and *may not be based upon mere speculation*.") (citations omitted) (emphasis added). Where, as here, a warrant is lacking in indicia of probable cause, the good faith exception does not apply.

15

### C.    January 23, 2020 Instagram Warrant

The Government has advised that it intends to rely not only on the September 2018 Baltimore County warrant to search the contents of Mr. Warren's Instagram account, but also on a January 2020 federal warrant authorizing a search of the same account. Mr. Warren moves to suppress the fruits any search conducted pursuant to this warrant. *See* Gov. Ex. G (under seal). The warrant fails to establish any nexus between *Mr. Warren's* Instagram account and the offenses under investigation. While the warrant details several publicly facing social media postings from owners of *other* target accounts, it does not contain any such information with respect to Mr. Warren or his account. The warrant is also invalid because it is overbroad. The warrant authorizes the search of nearly all files associated with the account from January 2015 through January 15, 2020. The warrant also authorizes the seizure of data containing evidence of certain crimes from April 17, 2017 through May 15, 2019. As to Mr. Warren, the only representations in the affidavit concerning alleged crimes relate information provided by a single unnamed confidential informant with respect to the April 2018 murders of CN and JA. There is no justification in the affidavit for the seizure of information associated with the account in the years before and after those murders. There is no information concerning Mr. Warren's alleged involvement with YGG members apart from information related to the April 2018 homicides. For example, there is no allegation of Mr. Warren's involvement

in a drug trafficking conspiracy with YGG members. In light of these serious deficiencies, the affidavit is so facially invalid as to preclude good faith reliance on the warrant.

In the alternative, Mr. Warren also requests a hearing with respect to this warrant pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Here, the affiant omitted material information that would have defeated any arguable basis to find probable cause to search and seize data after August 16, 2018. Specifically, the affiant did not inform Judge Coulson that Mr. Warren had been incarcerated since that date. Given that Mr. Warren was incarcerated, there is simply not probable cause to believe evidence of the target offenses would be found in the files of the Instagram account that postdate his arrest.

### D.   Post-*Carpenter* Stored Communications Act Order for Historical CSLI

Mr. Warren addresses this Order by way of a separate supplemental motion.

## CONCLUSION

For the reasons stated above and those to be presented at the motions hearing, this Court should suppress the fruits of the searches conducted pursuant to warrants in this case.

Respectfully submitted,

_____/s/_____

John M. McKenna
Michael E. Lawlor
Adam C. Demetriou
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of June, 2024, the foregoing was served on all parties via ECF.

_____/s/_____

John M. McKenna

18