## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  JKB-22-439** |
| | : | |
| **DAVID WARREN** | : | |
| | : | |
| **Defendant.** | : | |

---

## REPLY IN SUPPORT OF MOTION TO SUPPRESS IN-COURT AND OUT-OF-COURT IDENTIFICATIONS

Defendant David Warren ("Mr. Warren"), by and through his counsel, John M. McKenna, Michael E. Lawlor, Adam C. Demetriou, and Brennan, McKenna & Lawlor, Chtd., respectfully submits the following Reply in Support of his Motion to Suppress In-Court and Out-of-Court Identifications (ECF No. 142).

### I.    Factual Background

On May 30, 2016, members of BPD responded to the scene of a non-fatal shooting in the 500 block of East 43rd Street. There, officers observed five gunshot victims, one of whom fled the scene upon the arrival of police officers. One of the victims, JBW, spoke briefly with police on the day of the shooting. JBW indicated that she was too upset to participate in an interview. The next day, Detective Timothy Johnson, the lead investigator into the shooting, went to JBW's home. Det. Johnson was accompanied by Detective Adam Storie, who was not assigned to the

1

investigation. The officers planned to show JBW a photo array at her home. Instead, *both* Det. Johnson and Det. Storie transported JBW to BPD headquarters to show her the photo array. The three drove together in one police vehicle.[1]

At headquarters, JBW was placed in an interview room. Det. Johnson handed Det. Storie a photo array and directed him to show it to JBW. The photo array contained 6 photographs, and it included a photograph of Mr. Warren. By May 2016, BPD policy required that officers follow the double-blind/sequential photo array procedure. Det. Storie showed JBW the array. At 3:58 p.m., JBW identified Mr. Warren's photograph as depicting the man who fired shots the day prior. *See* Ex. A.[2] Though the interview room in which the array took place was equipped with audio and video recording capabilities, officers did not activate the recording system as Det. Storie presented the photo array. Immediately after the photo array, Det. Johnson entered the interview room. Detectives Johnson and Storie proceeded to interview JBW. At that time, the officers activated the recording equipment. At 7:55 p.m. that same evening, Det. Johnson swore out a Statement of Charges charging Mr. Warren with offenses related to the May 30 shooting.

---

[1] JBW's husband was also in the vehicle.

[2] The redacted photo array was produced to Mr. Warren on May 17, 2024. Mr. Warren understands that this is the only photo array at issue in this case where a witness identified Mr. Warren.

In May 2017, Mr. Warren proceeded to a jury trial on those charges in the Circuit Court for Baltimore City. Det. Storie, Det. Johnson, and JBW all testified under oath. At trial, JBW testified that, contrary to Det. Storie's testimony that he properly followed the double-blind/sequential photo array procedure, she had first been shown all of the photographs together at once, rather than one by one as required under policy. After seeing all of the photos together, she was shown the same photographs individually. JBW testified that she made an initial identification on the basis of the photographs that were shown all at once. After deliberating for under 90 minutes, the jury acquitted Mr. Warren of all charges, a stark rejection of JBW's testimony and identification.

The Government now seeks to introduce JBW's identification of Mr. Warren at the trial in this case. This Court should suppress JBW's out of court identification and exclude any in-court identification of Mr. Warren by her.

## II.    The Identification Procedure was Impermissibly Suggestive

The Fourth Circuit has held that a photo array procedure is impermissibly suggestive where a defendant's photo stands out from the other photos in the array. *United States v. Saunders*, 501 F.3d 384, 390 (4th Cir. 2007) ("The risk of suggestiveness comes when one photo stands out, as Saunders's did here.") Mr. Warren's photo starkly stands out from the other five photos presented to JBW in the array. First, Mr. Warren's clothing is different from that of the other men

depicted. Mr. Warren's photo is the only one in which the subject is wearing a button-down shirt. The open collar and buttons of the light-colored shirt draw attention to Mr. Warren. *Cf. Smith v. United States*, 777 A.2d 801, 806 (D.C. 2001) (holding that a photo array procedure was *not* impermissibly suggestive where *all* subjects were depicted wearing button-down shirts). Second, Mr. Warren's hairstyle stands out from those of the five other men in the photo array. Mr. Warren is depicted with a freshly cut, high bald fade with a shaved-in part at the front of his head. The other gentlemen pictured have hair on the sides of their heads that is significant longer than Mr. Warren's. And Mr. Warren is the only person pictures with a part shaved into the front of his hairline. As in *Saunders*, these factors render the photo array procedure at issue impermissibly suggestive.

But there is more. Contrary to the Government's argument, BPD did not follow the departmentally-required double-blind/sequential photo array procedure in this case. Detective Storie had spent time in close quarters with JBW *before* administering the photo array. Indeed, he accompanied Detective Johnson to her home and rode with her to BPD headquarters. Moreover, as the testimony at the state trial revealed, Det. Storie showed JBW *all* of the photos together before showing individual versions. JBW testified that she first made her identification upon seeing all of the photos together. In *Saunders*, the Fourth Circuit held that the failure on the part of BPD to follow department protocol with respect to photo arrays contributed

to the suggestive nature of the identification procedure. *Saunders*, 501 F.3d at 391.

So too here. Det. Storie was not a neutral, uninvolved officer at the time he

administered the photo array because he had spent time with JBW and the lead

investigator before the procedure. Moreover, rather than follow the dictates of the

sequential method, he showed JBW all of the photos at once. Troublingly, officers

did not record the photo array procedure even though they had the capability to do

so. Indeed, Det. Johnson and Det. Storie interviewed JBW in the same room after

administering the photo array. They activated the recording equipment for that

interview.[3] The Court should therefore find that the identification procedure was

impermissibly suggestive.

### III.    The Identification is Not Reliable

JBW's out of court identification is fundamentally unreliable. In assessing the

reliability of such an identification, courts consider the factors identified in *Neil v.*

*Biggers*, 409 U.S. 188, 199–200 (1972). Additionally, courts "consider other

evidence of the defendant's guilt when assessing the reliability of the . . .

identification." *Saunders*, 501 F.3d at 391–92. The Government's response ignores

---

[3] Presumably, the Government will ask this Court to credit the testimony of Det.
Storie regarding the administration of the photo array procedure as Detective
Johnson was not present during it. It appears that Det. Storie has significant
credibility problems. He appears on the Baltimore City State's Attorney's public Do
Not Call List.

incontrovertible evidence of the unreliability of the identification. A jury of 12 heard and observed the testimony of Det. Storie, Det. Johnson, JBW, and other witnesses. JBW's photo array was admitted as an exhibit at the trial. The jury swiftly and decisively *rejected* JBW's identification of Mr. Warren. Mr. Warren was acquitted of all charges. The Government makes no attempt to address these circumstances in its response. This Court should suppress JBW's out of court identification of Mr. Warren.

## IV.    The Court Should Preclude Any In-Court Identification of Mr. Warren by JBW

JBW should not be permitted to identify Mr. Warren at trial because any such identification would be tainted by the earlier, constitutionally infirm out of court identification procedure and because any such identification would be fundamentally unreliable. It is axiomatic that an in-court identification is inadmissible where it has been tainted by prior suggestive out of court identification. *United States v. Crews*, 445 U.S. 463, 472 (1980); *United States v. Belk*, No. 20-4551, 2022 U.S. App. LEXIS 35468, at *14 (4th Cir. Dec. 22, 2022) (noting that "suggestive out-of-court procedures can taint in-court identification"). As explained above, the photo array procedure performed in this case was impermissibly suggestive, and JBW's out of court identification of Mr. Warren is unreliable. Any in-court identification at this time would clearly be tainted by the prior procedure.

6

Moreover, any in-court identification would be *even more* unreliable given the length of time between the shooting and the trial in this matter. The shooting occurred on May 30, 2016. Mr. Warren will stand trial in September and October 2024, more than 8 years later. Additionally, JBW testified at length at Mr. Warren's previous trial, where he was the sole defendant. It is highly likely that any in court identification would be made in large part on the basis of having observed Mr. Warren on trial for that very shooting rather than on any recollection of the events of May 2016. The Court should therefore not permit JBW to identify Mr. Warren at trial.

## CONCLUSION

For the reasons stated above and those to be presented at the motions hearing, this Court should suppress the out of court and in-court identifications of Mr. Warren by JBW.

Respectfully submitted,

_____/s/_____
John M. McKenna
Michael E. Lawlor
Adam C. Demetriou
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of June, 2024, the foregoing was served on all parties via ECF.


\_\_\_\_\_/s/_____

John M. McKenna